### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 13-30019 |
| ) | |
| DONALD PLUNK, ) | |
| ) | |
| Defendant. ) | |

### SENTENCING COMMENTARY

**NOW COMES** Defendant, DONALD PLUNK, by and through his court-appointed attorney, Mark Kevin Wykoff, Sr. of the Wykoff Law Office, LLC, and for his Sentencing Commentary, submits the following pursuant to Local Rule 32.1 (Implementation of Sentencing Guidelines):

### BACKGROUND

**Prefatory Comments** – The Defendant's commentary herein applies to the Revised Presentence Investigation Report dated December 5, 2013. The sentencing hearing for the Defendant is scheduled for December 19, 2013, at 4:30 p.m., in the Springfield Division of the United States District Court for the Central District of Illinois, the Honorable Richard Mills, United States District Judge, presiding.

The purpose of this Sentencing Commentary is to assist the Court in determining an appropriate sentence for Donald Plunk. In deciding upon a sentence, a court is to consider (1) "the nature and circumstances of the offense" and (2) "the history and characteristics of the offender." 18 U.S.C. § 3553(a)(1).

**Case Overview** – On April 10, 2013, a single-count Indictment was filed in the U.S. District Court, Springfield, Illinois, charging that on or about December 22, 2012, in Green County, Illinois, the Defendant did knowingly possess with the intent to distribute more than 50 grams of a mixture or substance containing a detectable amount of methamphetamine.

On May 23, 2013, the Defendant appeared before U.S. Magistrate Judge Byron G. Cudmore pursuant to the issuance of a summons for an initial appearance. The government requested that he be detained and requested a detention hearing. He was placed in temporary custody pending the outcome of the hearing. On May 20, 2013, a detention hearing was held. The Court released the Defendant on pretrial supervision.

On August 28, 2013, the Defendant appeared before U.S. Magistrate Judge Cudmore and pled guilty to the sole count of the indictment. Count 1 charged Possession With Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B). The Government again requested that the Defendant be detained pending sentencing, but the Magistrate Judge found that "exceptional reasons" existed warranting Defendant's continued release on bond.

**Objections** - Defense counsel, counsel for the Government and the assigned Probation Officer conferred to discuss all pending objections. During the discussions, all objections were presented and argued in detail. There are no unresolved objections.

*Pro Se* **Objections** – The Defendant has been advised that he may present objections, commentary and addendums, as are allowable under the *Rone* decision. See *United States v. Rone*, 743 F.2d 1169; 1984 U.S. App. LEXIS 18951 (7th Cir. 1984). The *Rone* case implements Federal Rules of Criminal Procedure 32(a) (1) (A), 32(c) (3) (A), and 32(c) (3) (D).

A sentencing court must ensure that a Defendant has had an opportunity to read the revised presentence report and to confer with his attorney about it for a reasonable period of time before the sentencing hearing, and to comment adversely on its accuracy at the hearing. This allows a Defendant to present to the court any matters that a Defendant feels have not been fully presented by his defense attorney. Counsel for the Defendant welcomes any *pro se* objections by the Defendant not specifically set forth in the Revised Presentence Investigation Report or otherwise set forth herein.

Counsel for Mr. Plunk has advised him of his right to present *pro se* objections to the Revised Presentence Investigation Report. Counsel believes Defendant has no *pro se* objections.

**Burden of Proof** – The burden of proof on adjustments to the base offense level is on the proponent of the adjustment. Thus, increases in the offense level usually require the Government to provide the existence of the factor or factors giving rise to the increase. Conversely, if a decrease is requested, the Defendant has the burden of proof. *United States v. Booker,* 543 U.S. 220, 160 L.Ed.2d 621, 125 S.Ct. 738 (2005), did not change this principle, but may have an effect on the standard of proof required. The standard of proof has been a preponderance of the evidence. If an increase is substantial, some courts have stated that the proof must be clear and convincing. *Blakely v. Washington*, 542 U.S. 296, 159 L.Ed.2d 403, 124 S.Ct. 2531 (2004), would have required proof beyond a reasonable doubt.

Under the holding in *United States v. Coonce*, 961 F.2d 1268 (7th Cir. 1992), the Defendant acknowledges his burden to produce evidence when challenging the accuracy and completeness of the Revised Presentence Investigation Report.

**Legal Principles as to Sentencing** – Under 18 U.S.C. § 3553(a), a sentencing judge is to "impose a sentence sufficient, *but not greater than necessary* to comply with" the statutory purposes of federal sentencing. See 18 U.S.C. § 3553(a) (emphasis added). *Kimbrough v. United States*, 128 S.Ct. 558, 575 (2007) (referring to "§ 3553(a)'s overarching instruction"). Those purposes are (1) retribution, *id.* at (a)(2)(A); (2) deterrence, *id.* at (a)(2)(B); (3) incapacitation, *id.* at (a)(2)(C); and (4) rehabilitation, *id.* at (a)(2)(D). The statutory language "sufficient, but not greater than necessary" embodies the "parsimony" principle, *e.g., United States v. Scherrer*, 444 F.3d 91, 95 (1st Cir. 2006), which "insists that penalties should be no more severe than necessary." Alice Ristroph, *Desert, Democracy, and Sentence Reform*, 96 J. Crim. L. & Criminology 1293, 1336-37 (2006).

As a general rule, "no limitation shall be placed on the information concerning the [Defendant's] background, character, and conduct . . . which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Each of the four statutory purposes of sentencing poses a distinct question or set of questions, which are addressed below.

### *1. Retribution*

The retributive purpose of sentencing asks the following question: What sentence does this offender deserve? *See, e.g., Furman v. Georgia*, 408 U.S. 238, 308 (1972) (Stewart, J., concurring) (retribution involves "impos[ing] upon criminal offenders the punishment they deserve.'"); Kent Greenwalt, *Punishment*, in *Encyclopedia of Crime and Justice* 336, 1338 (Sanford H. Kadish, ed., 1983) (retributivists "claim [t]hat punishment is justified because people deserve it"); Herbert L. Packer, *The Limits of the Criminal Sanction* 10 (1968) (under the retributive justification "[t]he purpose of punishment is to inflict deserved suffering"). Retribution serves the societal "interest in seeing that the offender gets his 'just deserts.'" *Atkins v. Virginia*, 536 U.S. 304, 319 (2002).

The general question posed by the retributive rationale—what sentence does this offender deserve—requires consideration of two subsidiary questions. The first focuses on harm: What is the nature and extent of the harm that resulted from the offense? The second focuses on culpability: What is the nature and extent of the offender's culpability? A recent proposed draft of the Model Penal Code puts the retributive rationale this way: "punishment" should be "within a range of severity proportionate to the gravity of the offenses, the harms done to crime victims, and the blameworthiness of offenders." Model Penal Code § 1.02(2), Purposes; Principles of Construction (Preliminary Draft No. 3, 2004). *See also, e.g., Atkins*, 536 U.S. at 319 (for retributive purposes "the severity of the appropriate punishment necessarily depends on the culpability of the offender"); George P. Fletcher, *Rethinking Criminal Law* 461 (1978) (the retributive justification authorizes punishment commensurate with the offender's "wrongdoing…and culpability"); Stephen J.

Schulhofer, *Harm and Punishment: A Critique of Emphasis on the Results of Conduct in the Criminal Law*, 122 U. Pa. L. Rev. 1497, 1601 (1974) (retribution provides for "punishment in accordance with moral fault"). *See generally* 18 U.S.C. § 3553(a)(1) (requiring that a sentencing court consider both "the nature and circumstances of the offense" and "the history and characteristics of the Defendant").

Thus, for purposes of retribution, punishment should be in proportion to the severity of the offense. That is, "[t]he graver the offense (on some kind of scale of moral outrage), the more severe the punishment." Herbert L. Packer, *supra*, at 14. Put another way, retribution requires consideration of the "external effect[s] [of the offender's behavior] upon the victim and the community." Jerome Hall, *General Principles of Criminal Law* 216-17 (2d ed. 1960). This "principle of proportionality—that punishments should be proportionate in severity with the seriousness of crimes"—is the "most important retributive constraint" on sentencing. Andrew von Hirsch, *Proportionality in the Philosophy of Punishment: From "Why Punish?" to "How Much?,"* 1 Criminal Law Forum 259, 262 (1990). Because "[p]unishment . . . imparts blame" under the retributive model, "it should be inflicted only to the degree that it is deserved." Andrew von Hirsch, *Doing Justice* 71 (1976). *See also*, *e.g.*, Richard A. Posner, *Retribution and Related Concepts of Punishment*, 9 J. Leg. Studies 71, 71 (1980) (under the "retributive concept" of punishment, "'[i]t is morally fitting that a person who does wrong should suffer in proportion to his guilt, and the severity of the appropriate punishment depends on the depravity of his act'") (quoting John Rawls, *Two Concept of Rules*, 1 Philosophical Rev. 3, 4-5 (1955)); K. G. Armstrong, *The Retributivist Hits Back*, in *The Philosophy of Punishment* 138, 154 (H. B. Acton ed., 1969) ("[A]ll that a retributive theory of penalty fixing needs to say to deserve the name is that there should be a proportion between the severity of the crime and the severity of the punishment.").

Unlike the questions raised by the other statutory purposes of punishment, which look forward in time and at the potential utility of punishment in achieving other social ends, the questions

posed by the retributive rationale look backward in time.  The retributive rationale views punishment not as a means to an end, but as a proper end in itself - "a fitting social response to the commission of crime." George P. Fletcher, *supra*, at 415. *See also, e.g.,* Wayne R. LaFave & Austin W. Scott, *Criminal Law* § 1.5(a), at 26 (2d ed. 1986) (the retributive justification is based on the premise that "it is only fitting and just that one who has caused harm to others should himself suffer for it").  For purposes of retribution, punishment involves "payment of something undesirable . . . and the purpose of the payment is to settle the wrongdoer's moral account." William Kneale, *The Responsibility of Criminals*, in *The Philosophy of Punishment* 172, 177 (H. B. Acton ed., 1969).

### *2. Deterrence*

The deterrence rationale poses two questions.  One relates to general deterrence, which is directed at society as a whole. *See, e.g, Bae v. Shalala*, 44 F.3d 489, 494 (7th Cir. 1994).  The other relates to special (or specific) deterrence, which focuses on the individual offender. *See, e.g, id.* General deterrence is only indirectly related to the sentencing decision in any particular case.  The heart of this rationale lies not in any particular sentence, but rather in the generally applicable "threat[s] of punishment" that are communicated by the criminal laws to potential offenders." Johannes Andenaes, *The Morality of Deterrence*, 37 U. Chi. L. Rev. 649, 649 (1970). *See also*, *e.g.*, H. L. A. Hart, *Punishment and Responsibility* 1 (1968) (the focus of general deterrence is "fear of the penalties threatened by the law"); Franklin E. Zimring & Gordon J. Hawkins, *Deterrence: The Legal Threat in Crime Control* 91 (1973) (the "central concept" of general deterrence "is that of a threat"). For purposes of general deterrence, the function served by a particular sentence is simply to show that the law makes good on its deterrent threats.  As Oliver Wendell Holmes put it:

> The law threatens certain pains if you do certain things, intending thereby to give you a new motive for not doing them. If you persist in doing them, it has to inflict the pains in order that its threats may continue to be believed.

Oliver Wendell Holmes, *The Common Law* 40 (1881; 1963 ed.). Thus, with respect to the sentencing decision that is to be made in a given case, general deterrence asks the following question:  What

sentence is appropriate in order to communicate to other potential offenders that the law makes good on its deterrent threats?

Because it is directed at the individual offender, special deterrence asks a different sort of question. For purposes of special deterrence, the question is this: What sentence is appropriate in order to inhibit this particular individual from committing further crimes? *See, e.g., Bae*, 44 F.3d at 494.

### *3. Incapacitation*

The incapacitation rationale for punishment poses the following question: What sentence is appropriate in order "to protect the public from further crimes" by this particular offender? 18 U.S.C. § 3553(a)(2)(C). The principle underlying this rationale is that "society may protect itself from persons deemed dangerous because of their past criminal conduct by isolating these persons from society." Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 1.5, at 23 (2d ed. 1986).

### *4. Rehabilitation*

Finally, the rehabilitation rationale asks the following question: What sentence will "provide the Defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner"? 18 U.S.C. § 3553(a)(2)(D). Under the federal sentencing scheme, this rationale focuses solely on non-incarcerate elements of a sentence. "[I]mprisonment is not," the statutory scheme makes clear, "an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). *See also, e.g.,* 29 U.S.C. 994(k) (addresses "the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the Defendant or providing the Defendant with needed education or vocational training, medical care, or other correctional treatment.")

The difficulty, therefore, for any sentencing judge is fairly balancing the requirements of rehabilitation, incapacitation, deterrence and retribution such that the needs of society to protect itself, punish the offender, deter others, and revitalize the offender as a law-abiding citizen are met.

## SENTENCING FACTORS

**Right of Allocution** – The Defendant has been advised as to his right of allocution, and he intends to make such a statement to the Court at the time of sentencing.

**Statutory Factors: 18, U.S.C. Section 3553(a)** – The primary directive in § 3553 (a) is that a court must impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. 18 U.S.C. § 3553 (a)(2).

Those purposes include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
- to adequately deter criminal conduct;
- to protect the public from future crimes of the Defendant; and,
- to provide the Defendant with necessary medical care and treatment.

In determining what sentence to impose on a particular Defendant, a court is to consider those same factors, as well as the nature and circumstances of the offense; the history and characteristics of the Defendant; the kinds of sentences available; the sentencing range under the Sentencing Guidelines; any pertinent policy statements; and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(6).

For practical purposes Defendant is a felony first-offender for a non-violent crime. Defendant's *de minimis* criminal history is truly more commensurate with a criminal history category of I, however, due to the fact that he was on misdemeanor DUI probation (from which he was notably "successfully" discharged) during the period in which offense conduct in the instant case occurred, his Criminal History Category transformed from I to II. In this regard, contrary to the Government's assertion that Defendant's supplier, Herrera-Cuevas had "less criminal history," Defendant may have been truly similarly-situated, as far as an actual criminal

history is concerned. But for the 2-point addition pursuant to USSG Section 4A1.1(d), Defendant's guideline range would have been 135-168, as opposed to 151-188.

Additionally, Defendant was not the typical distributor, that being the seller for profit. Defendant - an honorably-discharged veteran who has mental-health issues attributed to a one-year tour of combat duty - then became addicted to amphetamines after he left the service and became a long-distance truck driver. He then became a methamphetamine addict. In order to satisfy his addiction, he would ingest half of the quantity he received on a front, then sell the other half so that he could pay his debt to Herrera-Cuevas. In other words, his motivation to distribute was for the sole purpose of satisfying his own addiction. In this regard he is also dissimilarly situated from Herrera-Cuevas, a profiteer, who received the same sentence that the Government now seeks to have imposed upon Defendant Plunk.

**Medical History** – Counsel agrees with the finding of the Supervisory U.S. Probation Officer, that the medical conditions of the Defendant potentially give rise to a variance pursuant to USSG § 5H1.3 & 5H1.4. Defendant respectfully requests that his documented medical history be considered in fashioning an appropriate sentence, and that he receive treatment for the same during his term of imprisonment.

**Downward Variance** – Along with the Government, the Defendant respectfully prays that this Honorable Court grant a variance from the low-end of the guideline range due to the significance and usefulness of the Defendant's assistance in apprehending a prolific distributor of methamphetamine in the Central District.

The Government's recommendation of an approximate 20% variance – while sincerely appreciated – is under-representative of the Defendant's Substantial Assistance, as the supplier from whom the Defendant made a controlled buy certainly had a buyer-seller relationship with more customers than the Defendant, and as the PSIR reflects, Herrera-Cuevas had the capability

to furnish multiple-ounce quantities on a front basis. Defendant's direct actions – in which he placed himself in harm's way in that it is now well known to Herrera-Cuevas and his confederates that Defendant's cooperation directly resulted in Herrera-Cuevas' liberty deprivation – led to the arrest of a significant, large-scale distributor of an illicit substance that has been a long-standing scourge on this District.

**Place of Incarceration** – In light of the fact that probation is expressly precluded by statute, the Defendant requests from the Court a recommendation to be placed within a Bureau of Prison facility as close to Quincy, IL as is possible so the Defendant may continue contacts with his family.

Defendant would also request that the Court grant him the privilege to voluntarily surrender to the institution of incarceration as designated by the Bureau of Prisons by adopting the Magistrate's previous finding that "exceptional reasons" exist as to why this Defendant's detention would not be appropriate. 18 U.S.C. § 3145(c); *see also* 18 U.S.C. § 3143. In fact, according to U.S. Probation Officer Thomas A. Brown, the Defendant has complied with all Court-ordered conditions of release. As a condition of bond, defendant has been mandated to submit to random urinalysis testing. All specimens that he has submitted have tested negative for the use of illegal substances.

**Program Recommendations** – It is respectfully requested that this Honorable Court recommend that Defendant be placed in the Bureau of Prisons' Residential Drug Abuse Program, commonly referred to as "RDAP."

**Sentencing Recommendations** – That the Defendant – who assisted the Government immensely - receive 78 months' imprisonment. Moreover, in light of Defendant's age, a lengthy term of imprisonment could have the practical effect of the imposition of a life sentence, and thus eradicate any incentive for the Defendant to reform or participate in programs designed to

accomplish the same. Furthermore, the actual costs associated with incarcerating prisoners of Defendant's age are demonstrated to be three-fold the annual cost of incarcerating the median-aged offender, and documented recidivism rates amongst the social-security aged offender are in the single digits.

## PRAYER FOR RELIEF

Defendant, Donald Plunk, respectfully requests this Honorable Court to:

1. Consider all issues set forth in this Commentary and fashion a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing; and,

2. For such other and further relief as this Court deems just and equitable.

        Respectfully submitted,
        **DONALD PLUNK**, Defendant

By:   s/Mark Kevin Wykoff, Sr.
       Mark Kevin Wykoff, Sr.
       Reg. No. 6292093
       Attorney for Defendant
       Wykoff Law Office, LLC
       919 South 8th Street
       Springfield, Illinois 62703
       Telephone: (217) 522-3319
       Fax: (217) 522-4147
       E-mail: mark@wykofflaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 19, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Eric Long
Assistant U.S. Attorney
318 South 6th Street
Springfield, IL 62701

I also certify that on December 19, 2013 a copy of the foregoing was mailed to:

Mr. Donald Plunk
720 Jefferson
Quincy, IL 62301

                                  s/Mark Kevin Wykoff, Sr.
                                  Mark Kevin Wykoff, Sr.
                                  Reg. No. 6292093
                                  Attorney for Defendant
                                  Wykoff Law Office, LLC
                                  919 South 8th Street
                                  Springfield, Illinois 62703
                                  Telephone: (217) 522-3319
                                  Fax: (217) 522-4147
                                  E-mail: mark@wykofflaw.com